B27 (Official Form 27)(12/13)

# UNITED STATES BANKRUPTCY COURT

District of New Jersey

In re: DIANE MENNA and
GERALD C MENNA
Debtors

Case No.: 14-17041
Chapter: 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: Ally Financial serviced by Ally Servicing LLC - Assignor to Vehicle Asset Universal Leasing Trust (a.k.a. "VAULT TRUST", or "V.A.U.L. Trust", or "VAULT", or "V.A.U.L.T.") (hereinafter collectively referred to as "Creditor" throughout this reaffirmation package)

2. Amount of the debt subject to this reaffirmation agreement:
$8,545.82 on the date of bankruptcy $8,545.82* to be paid under reaffirmation agreement
**Amount reaffirmed does not include the Purchase Option of $24,830.35.*

3. Annual percentage rate of interest: N/A - Lease prior to bankruptcy
N/A - Lease under reaffirmation agreement ☒ Fixed Rate ☐ Adjustable Rate

4. Repayment Terms (if fixed rate):
18 regular monthly payments of $439.89 each starting on April 25, 2014.
2 monthly cure payments of $209.27 each starting on April 25, 2014.
1 cure payment of $209.26 due on June 25, 2014.
Lease matures on Oct 24, 2015

5. Collateral, if any, securing the debt: Current market value: N/A - Lease
Description: 2012 CADILLAC SRX VIN: 3GYFNAE36CS607953

6. Does the creditor assert that the debt is nondischargeable? ☐ Yes ☒ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | | Debtor's Income and Expenses as Stated on Reaffirmation Agreement | |
|---|---|---|---|
| 7A. Total monthly income from Schedule I, line 12 | $ 4581.62 | 7B. Monthly income from all sources after payroll deductions | $ 4581.62 |
| 8A. Total monthly expenses from Schedule J, line 22 | $ 5951 – | 8B. Monthly expenses | $ 5411.73 |
| 9A. Total monthly payments on reaffirmed debts not listed on Schedule J | $ 0 | 9B. Total monthly payments on reaffirmed debts not included in monthly expenses | $ 439.89 |
| | | 10B. Net monthly income (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) | $ (1269.38) |

DIANE MENNA and GERALD C MENNA 14-17041

11. Explain with specificity any difference between the income amounts (7A and 7B):

SAME, BUT GERALD IS CARPENTER + HAS MORE WORK DUE TO CHANGE IN WEATHER, ETC & CAN INCREASE

12. Explain with specificity any difference between the expense amounts (8A and 8B): MONTHLY INCOME

SEE #11

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true correct.

Signature of Debtor (only required if line 11 or 12 is completed)

Signature of Joint Debtor (if applicable, and only required if line 11 or 12 is completed)

Other Information

☑ Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:

SEE ABOVE - NEED MOTOR VEHICLE FOR WORK

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?

☑ Yes ☐ No

If the debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?

☑ Yes ☐ No

**FILER'S CERTIFICATION**

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on the Reaffirmation Agreement Cover Sheet.

Signature

Print/Type Name & Signer's Relation to Case

B240A (Form B240A) (4/10)

Check one.
☐ **Presumption of Undue Hardship**
☐ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation, Part II Below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## District of New Jersey

In re: DIANE MENNA and
GERALD C MENNA
Debtors

Case No. 14-17041

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Ally Financial serviced by Ally Servicing LLC

☐ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of form.**

A. Brief description of the original agreement being reaffirmed: Auto - Lease
*For example, auto loan*

B. ***AMOUNT REAFFIRMED:*** $8,545.82*

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before April 22, 2014, which is the date of the Disclosure Statement portion of this form (Part V). **Amount reaffirmed does not include the Purchase Option of $24,830.35.*

*See the definition of "Amount Reaffirmed" in Part V.C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is N/A - Lease.

*See definition of "Annual Percentage Rate" in Part V.C below.*

This is a (check one) ☒ Fixed rate ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☒ 18 regular monthly payments of $439.89 starting on April 25, 2014.
This lease obligation matures on October 24, 2015.

☒ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount. *In addition to the regular payments above, the existing payment defaults shall be cured as follows:*
2 monthly cure payments of $209.27 starting on April 25, 2014.
1 cure payment of $209.26 due on June 25, 2014.

E. Describe the collateral, if any, securing the debt:

Description: Leased Vehicle - 2012 CADILLAC SRX VIN: 3GYFNAE36CS607953
Current Market Value: N/A - Leased Vehicle owned by Creditor

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☐ Yes. What was the purchase price for the collateral? N/A Leased Vehicle
☒ No. What was the amount of the original loan? N/A Leased Vehicle

G. Detail the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement: *No changes made.**

** Under the parties' current agreement, any existing payment defaults are immediately due and payable. However, pursuant to this reaffirmation agreement, Creditor is allowing the Debtor(s) to cure said defaults over time (see Repayment Terms above).*

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit: ______________________________

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?
Check one. ☑ Yes ☐ No

B. Is the creditor a credit union?
Check one. ☐ Yes ☒ No

C. If your answer to EITHER question A. or B. above is "No" complete 1. and 2. below.

1. Your present monthly income and expenses are:

a. Monthly income form all sources after payroll deductions (take-home pay plus any other income) $ 4581.62

b. Monthly expenses (including all reaffirmed debts except this one) $ 5411.73

c. Amount available to pay this reaffirmed debt (subtract b. from a.) $ 0

d. Amount of monthly payment required for this reaffirmed debt $ 439.89

*If the monthly payment on this reaffirmed debt (line d.)* ***is greater than*** *the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship". Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship".*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

Check one of the two statements below, if applicable:

☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

☑ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:
Debtor work as carpenter seasonal & will increase in spring & summer to increase monthly income Needs motor vehicle for work

Use an additional page if needed for a full explanation.

Form B240A, Reaffirmation Documents                                                                    Page 4

D. If your answers to BOTH questions A. and B. above were "Yes", check the following statement, if applicable:

☐ You believe this reaffirmation agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship".*

DIANE MENNA and GERALD C MENNA 14-17041

**PART III. CERTIFICATION BY DEBTORS AND SIGNATURES OF PARTIES**

We hereby certify that:

(1) We agree to reaffirm and assume the debt described above;

(2) Before signing this reaffirmation agreement, We read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) We are entering into this agreement voluntarily and fully informed of our rights and responsibilities; and

(5) We have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date: 5/12/14 Signature ______________________
*Debtor*

Date: 5/12/14 Signature ______________________
*Joint Debtor, if any*

---

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor Ally Financial serviced by Ally Servicing LLC
Print Name

PO Box 130424, Roseville, MN 55113-0004
Address

Cole Bernbel
Print Name of Representative

______________________ Signature

6/18/14 Date

**PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)**

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☑ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date: 5/12/14 Signature of Debtor's Attorney ______________________

Print Name of Debtor's Attorney MARK A STEINBERG

DIANE MENNA and GERALD C MENNA 14-17041

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this reaffirmation agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement**

      i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

      ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B. INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney section (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

## C. DEFINITIONS

1. "**Amount Reaffirmed**" means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2 "**Annual Percentage Rate**" means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3 "**Credit Union**" means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

B240B (Form B240B) (12/09)

# UNITED STATES BANKRUPTCY COURT
## District of New Jersey

In re: DIANE MENNA and
GERALD C MENNA
Debtors

Case No. 14-17041

Chapter 7

**MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT**

We the debtors, affirm the following to be true and correct:

We are not represented by an attorney in connection with this reaffirmation agreement.

We believe this reaffirmation agreement is in our best interest based on the income and expenses We have disclosed in my Statement in Support of Reaffirmation Agreement, and because (provide any additional relevant reasons the court should consider):

________________________________________

________________________________________

Therefore, we ask the court for an order approving this reaffirmation agreement under the following provisions *(check all applicable boxes)*:

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income, as explained in Part II of Form B240A, Reaffirmation Documents).

Signed : ____________________
(Debtor)

____________________
(Joint Debtor, if any)

Date: ________________

B240C ALT (Form 240C ALT) (04/10)

# UNITED STATES BANKRUPTCY COURT
## District of New Jersey

In re: DIANE MENNA and GERALD C MENNA
Debtors

Case No. 14-17041

Chapter 7

## ORDER ON REAFFIRMATION AGREEMENT

The debtors DIANE MENNA and GERALD C MENNA have filed a motion for approval of the reaffirmation agreement dated ____________________ made between the debtors and creditor Ally Financial serviced by Ally Servicing LLC. The court held the hearing required by 11 U.S.C. § 524(d) on notice to the debtors and the creditor on ______________.

COURT ORDER [*Court use only*]:

☐ The court grants the debtors' motion under 11 U.S.C. §524(c)(6)(A) and approves the reaffirmation agreement described above as not imposing an undue hardship on the debtors or a dependent of the debtors and as being in the best interest of the debtors.

☐ The court grants the debtors' motion under 11 U.S.C. §524(k)(8) and approves the reaffirmation agreement described above.

☐ The court does not disapprove the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court disapproves the reaffirmation agreement under 11 U.S.C.§ 524(m).

☐ The court does not approve the reaffirmation agreement.

BY THE COURT

Date: ____________________

______________________________
*United States Bankruptcy Judge*

# CERTIFICATE OF TITLE

HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK

| PREFIX | IDENTIFICATION NUMBER | SUFFIX | YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|---|---|---|
| | 3GYFN AE36C S6079 53 | | 2012 | CAD | SRX | WAGON |

| TYPE OF TITLE | DUPLICATE NO | GVW/WC/LGTH | COLOR/MTL/HP | DEALER I.D. | AXLES/PROP | FUEL |
|---|---|---|---|---|---|---|
| STANDARD | | 8 | BK | 00412N | 2 | |

| FEE | ISSUE DATE | VIN-REPLACEMENT | MILEAGE | STATUS |
|---|---|---|---|---|
| 85.00 | 06-01-2012 | | 50 | A |

F-FLOOD S-SALVAGE
P-POLICE T-TAXI
L-LEMON LAW
A-ACTUAL MILEAGE
N-NOT THE ACTUAL MILEAGE
M-MILEAGE EXCEEDS THE MECHANICAL LIMITS

OWNER(S)
VAULT TRUST LEASING
3104 UNIONVILLE RD STE 200
CRANBURY TWP PA 16066

NUMBER OF OWNERS: 1
NUMBER OF LIENHOLDERS: 1

OWNER DL/CC #:

I, CHIEF ADMINISTRATOR OF THE MOTOR VEHICLE COMMISSION, OF THE STATE OF NEW JERSEY, DO HEREBY CERTIFY THAT EVIDENCE OF PURCHASE OF OWNERSHIP, IN COMPLIANCE WITH THE LAWS OF THE STATE OF NEW JERSEY, OF THE DESCRIBED ARTICLE, HAS BEEN RECORDED AND FILED WITH ME, AND I DO HEREBY ISSUE THIS CERTIFICATE OF OWNERSHIP SUBJECT TO SECURITY AGREEMENT OR LIEN, IF ANY AS STATED

SIGNATURE

CONTROL NUMBER AK437930

State of New Jersey
MOTOR VEHICLE COMMISSION

SECOND LIENHOLDER
DATE

SECOND RELEASE
LIEN RELEASED BY:
SIGNATURE
TITLE DATE

FIRST LIENHOLDER
DATE 06-01-2012
03634 74602 10300
ALLY FINANCIAL INC
PO BOX 8140
COCKEYSVILLE MD 21030

FIRST RELEASE
LIEN RELEASED BY:
SIGNATURE
TITLE DATE

ISM/SS-1 (R9/10)

RV201215300000752

ALTERATION OR ERASURE VOIDS THIS TITLE — KEEP IN SAFE PLACE

VOID IF ALTERED

↑ FOLD AND TEAR AT PERFORATION ↑

STATE OF NEW JERSEY

THIS IS A RECEIPT DOCUMENT ONLY

VIN: 3GYFNAE36CS607953 MILEAGE: 50 A DUP: STATUS:
CAD 2012 WAGON SRX BK 8 AXLE:2 DEALER ID:00412N

TITLE I : 85.00
SALES TAX : 0.00
LFIS : 0.00
TOTAL : 85.00

VAULT TRUST LEASING
3104 UNIONVILLE RD STE 200
CRANBURY TWP PA 16066
RV201215300000752 85.00 I STANDARD

LIENHOLDER(S)
03634 74602 10300
ALLY FINANCIAL INC

Menna V89BYM

AK437930

CUSTOMER COPY

# LEASE

**Ally SmartLease Agreement • Monthly Payment**

LESSEE:
GERALD C MENNA
DIANE MENNA
162 MONMOUTH RD, MONMOUTH
OAKHURST NJ 07755

LESSOR:
GOLD COAST AUTOMOTIVE LLC
2123 HIGHWAY 35 NORTH
OAKHURST NJ 07755

This is an agreement to lease a vehicle. This is not a purchase agreement. You are not buying the vehicle. By signing this lease, you agree to everything on the front and back.
"We", "us", and "our" refer to Lessor named above and any assignee. An "assignee" is a person to whom this lease is assigned (if it is assigned).
☐ If this box is checked, Lessor (Retailer) is helping to arrange this lease and Lessor (Retailer) will assign it and sell the vehicle to Ally Financial.
☐ If this box is checked, Any helping to arrange this lease and Lessor (Retailer) will assign it and sell the vehicle to Central Originating Lease Trust.
☒ If this box is checked, Lessor (Retailer) will assign this lease and sell the vehicle to **ALLY FINANCIAL**
☐ If this box is checked, Lessor (Retailer) intends not to assign this lease.
Assignee's address and telephone number **P.O. BOX 8110 COCKEYSVILLE, MD 21030**

## THE VEHICLE YOU ARE LEASING

| New/Used | Year | Make & Model | Body Style | Vehicle ID # | Mileage | Primary Use |
|---|---|---|---|---|---|---|
| NEW | 2012 | CADILLAC TRU/SRX | SUV | 3GYFNAE36CS607953 | 29 | ☒ Personal, Family, or Household ☐ (Commercial, Business, or Agricultural) |

Number of Engine Cylinders **6**   Transmission ☒ Automatic ☐ Manual   Brakes ☒ Power assisted ☐ Manual   Steering Mechanism ☒ Power assisted ☐ Manual
Air Cond. ☒ Yes ☐ No   Manufacturer's Suggested Retail Price as shown on window sticker, if any $ **43785.00**
Dealer Installed Options: **N/A**   GVW (in truck) **5200**   ☐ Public Conveyance

### Prior Use
☐ 1,000 miles or less on odometer   ☐ Personal, family, or household   ☐ Demonstrator   ☐ Livery   ☐ Daily rental   ☐ Police   ☐ Prior wreckage   ☐ Unknown

## FEDERAL CONSUMER LEASING ACT DISCLOSURES

| 1. Amount Due at Lease Signing or Delivery (Itemized Below) | 2. Monthly Payments Your first monthly payment of $ **439.89** is due on **05/25/2012**, followed by **36** payments of $ **439.89** due on the **25th** of each month. The total of your monthly payments is $ **17155.71** | 3. Other Charges (not part of your monthly payment) Disposition fee (if you do not purchase the vehicle) $ **N/A** $ **N/A** $ **N/A** Total $ **N/A** | 4. Total of Payments (The amount you will have paid by the end of the lease) $ **23690.21** |
|---|---|---|---|
| $ **7174.39** | | | |

*Itemization of Amount Due at Lease Signing or Delivery

**5. Amount Due at Lease Signing or Delivery:**
a. Capitalized cost reduction ........ $ **5053.00**
b. First monthly payment ........ $ **439.89**
c. Refundable security deposit ........ $ **N/A**
d. Title fees ........ $ **N/A**
e. Registration fees **$399.00, NJ TIRE FEE $7.50** $ **406.50**
f. **N/A** ........ $ **N/A**
g. **DOC FEE** ........ $ **175.00**
h. **ACQUISITION FEE** ........ $ **700.00**
i. **N/A** ........ $ **N/A**
j. Total ........ $ **7174.39**

**6. How the Amount Due at Lease Signing or Delivery will be paid:**
a. Net trade-in allowance ........ $ **N/A**
b. Rebates and noncash credits ........ $ **3763.00**
c. Amount to be paid in cash ........ $ **3409.39**

d. Total ........ $ **7174.39**

**7. Your monthly payment is determined as shown below:**
a. Gross capitalized cost. The agreed upon value of the vehicle ($ **42375.00**) and any items you pay for over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) ........ $ **44338.71**
b. Capitalized cost reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost ........ $ **5853.00**
c. Adjusted capitalized cost. The amount used in calculating your base monthly payment ........ $ **38485.71**
d. Residual value. The value of the vehicle at the end of the lease used in calculating your base monthly payment ........ $ **22330.35**
e. Depreciation and any amortized amounts. The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term ........ $ **16155.36**
f. Rent charge. The amount charged in addition to the depreciation and any amortized amounts ........ $ **1000.35**
g. Total of base monthly payments. The depreciation and any amortized amounts plus the rent charge ........ $ **17155.71**
h. Lease payments. The number of payments in your lease ........ **39**
i. Base monthly payment ........ $ **439.89**
j. Monthly sales/use tax (estimated) ........ $ **N/A**
k. **N/A** ........ $ **N/A**
l. Total monthly payment ........ $ **439.89**

**Early Termination.** You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and/or mileage in excess of **10000** miles per year at the rate of $ **.25** per mile.
**9. Purchase Option at End of Lease Term.** You have an option to buy the vehicle at the end of the lease term for $ **22330.35**, plus official fees and taxes.
**10. Other Important Terms.** See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, and insurance.

**11. ITEMIZATION OF GROSS CAPITALIZED COST.**
a. Agreed upon value of the vehicle ........ $ **42375.00**
b. Any administrative fee ........ $ **N/A**
c. Licensing/registration/titles fees ........ $ **N/A**
d. Sales tax ........ $ **1534.71**
e. Other tax (describe) **N/A** ........ $ **N/A**
f. Optional service contract ........ $ **N/A**
g. Optional maintenance contract ........ $ **N/A**
h. Optional life insurance ........ $ **N/A**
i. Optional disability insurance ........ $ **N/A**
j. **N/A** ........ $ **N/A**
k. **SMARTLEASE PROT/ APS 001** ........ $ **429.00**
Gross Capitalized Cost ........ $ **44338.71**

**12. THE VEHICLE YOU ARE TRADING.** (year) (make) (model)
Gross trade-in value ........ $ **N/A**
Payoff ........ $ **N/A**
Net trade-in value ........ $ **N/A**

**13. TOTAL COST OF THE LEASE** (if you are never in default, and you use your option to buy the vehicle at scheduled lease end)
Amount due at lease signing or delivery ........ $ **7174.39**
Total of monthly payments (other than first monthly payment) ........ $ **16715.82**
Security deposit and any tax or liability insurance ........ $ **N/A**
Price if you buy at scheduled lease end ........ $ **24330.35**
Total cost of the lease ........ $ **48720.56**
plus any related official fees and taxes

**14. OFFICIAL FEES AND TAXES.** You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease or the vehicle that the government levies on us, the vehicle, or the lease (except our net income taxes). We may charge your monthly payment if taxes change. We may bill you separately for official fees and taxes.
TOTAL ESTIMATED FEES AND TAXES YOU MUST PAY DURING LEASE ........ $ **2116.81**
The actual total of fees and taxes may be higher or lower depending on tax rates in effect or the vehicle value when a fee or tax is assessed.
a. Title/lien fees ........ $ **N/A**
b. Registration fees/taxes **$399.00, NJ TIRE FEE $7.50** $ **406.50**
c. License fees/taxes ........ $ **N/A**
d. Sales/use taxes (including tax on capitalized cost reduction) $ **1534.71**
e. Excise taxes ........ $ **N/A**
f. Property taxes ........ $ **N/A**
g. Other (describe) **DOC FEE** ........ $ **175.00**
h. Other (describe) ........ $ **N/A**
i. Other (describe) **N/A** ........ $ **N/A**

**15. MILEAGE. Ultra Low Mileage: 10,000** miles/year ☒ (or) ☐ Lessee
Base Mileage Allowance ☐ 15,000 miles/year   ☐ Low mileage: 12,000 miles/year (and Co-lessee) initials
☐ Medium-duty truck (gasoline): 25,000 miles/year
☐ Medium-duty truck (diesel): 35,000 miles/year

Extra Miles. You are buying **N/A** extra miles at $ **N/A** per mile. If the lease ends on or after the last scheduled payment is due, we will credit you with $ **N/A** per mile for each unused extra mile. There will be no credit if the lease ends early, you buy the vehicle, or the vehicle is a total loss.
Total Allowed Mileage on the Odometer at Lease End is ........ **32575** miles
Starting odometer mileage ........ **50** miles
Base mileage allowance ........ **32525** miles
Purchased extra miles ........ **N/A** miles

Excess Mileage Charge. The excess mileage charge is $ **.25** per mile for each mile beyond the total allowed miles, plus tax. If the lease ends early and the vehicle is not a total loss, any excess mileage and wear charge will not be more than residual value minus the vehicle sale price. There is no excess mileage charge if you buy the vehicle.

**16. LATE CHARGE.** If we do not receive a full monthly payment within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.

**17. CHARGE FOR FINES.** If the government imposes a fine related to the vehicle and you do not pay it promptly, we may pay it. Each time we pay a fine, you will pay us the amount when we ask. If we have to pay a fine or take other action because you don't pay a fine promptly, you will also pay us $25.

**18. SCHEDULED LEASE END DATE.** This lease is scheduled to end on **08/24/2015**. (month)(day)(year) You are scheduled to return the vehicle on this date.

**19. LEASE END DAILY EXTENSION CHARGE.** $ **17.80** per day (plus tax), beginning on the eighth day after scheduled lease end date.

**20. REQUIRED VEHICLE INSURANCE INFORMATION. YOU MUST PAY FOR ANY physical** [redacted]

Agent's name: **N/A**
Policy no. **N/A**   **N/A** ☐ Physical damage **N/A**
Deductible: Collision $ _____ Comprehensive $ _____

**21. OPTIONAL LIFE AND DISABILITY INSURANCE.** We do not require life or disability insurance. If you sign below, we will pay to get the coverage(s) checked for the lease term. We will include the premiums in your base monthly payment. A notice you receive when you sign this lease describes the coverage(s). The insurance may not cover lease end and other amounts due besides the base monthly payment.

Insurer name: _____ **N/A** _____
Address: _____ **N/A** _____

☐ Life insurance ☐ Lessee ☐ Co-Lessee ☐ Both   Premium $ **N/A**   Coverage limit $ **N/A**
☐ Disability insurance (Lessee only)   Premium $ **N/A**   Monthly coverage limit $ **N/A**

LESSEE'S SIGNATURE X _____ Age **N/A**
CO-LESSEE'S SIGNATURE X **N/A** _____ Age **N/A**

**22. WARRANTY AND EXCLUSION OF WARRANTY.** You have the benefit of any warranty checked below.
☒ Standard manufacturer's warranty
☐ **N/A**

Warranty papers that are separate from this lease state any coverage limits.
The lease gives you a warranty that the vehicle conforms to the description in this lease.
**THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE. WE MAKE NO IMPLIED WARRANTY OF MERCHANTABILITY. THERE IS NO WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE.**

**23. OPTIONAL SERVICE AND MAINTENANCE CONTRACTS**
Name _____ **N/A** _____ Term **N/A** months, _____ **N/A** miles
Name _____ **N/A** _____ Term **N/A** months, _____ **N/A** miles
If you are buying a service or maintenance contract now, you may pay for it at lease signing. If you do not, the price will be in the capitalized cost and you will pay finance charges on the price.

**THIS IS THE ENTIRE AGREEMENT.** This lease, including the front and back of this form, contains the entire agreement between you and us relating to the lease of the vehicle. Any change to the terms of this lease must be in writing and signed by you and us. No oral changes are binding.

LESSEE: X **GERALD C MENNA** BY _____   CO-LESSEE: X **DIANE MENNA** _____

We may delay or refrain from enforcing any of our rights under this lease without losing them.
**NOTICE TO LESSEE:** 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.
YOU AGREE TO THE TERMS OF THIS LEASE. YOU CONFIRM THAT BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT
YOU CONFIRM THAT YOU SIGNED THIS AGREEMENT AND RECEIVED A COPY AT _____ **OAKHURST NJ** _____ On **05 / 25 / 2012**
(city)   (state)   (month)(day)(year)

**NOTICE: THE LESSEE AND THE LESSOR SHALL BE ENTITLED TO REVIEW THE CONTRACT FOR ONE BUSINESS DAY BEFORE SIGNING THE CONTRACT.**
Lessee and any Co-Lessee acknowledges that they have had at least one business day to review the lease before signing it.
Lessee (and Co-Lessee) initial _____

LESSEE: X **GERALD C MENNA** BY _____
CO-LESSEE: **DIANE MENNA** _____
LESSOR: **GOLD COAST AUTOMOTIVE LLC** BY _____ TITLE _____ DATE: X **05/25/2012**

Lessor assigns all right, title, and interest in this lease to the party identified in the above box as the intended assignee, under the terms of the Lease Plan Dealer Agreement in effect from time to time with that assignee (the "Dealer Agreement"). Lessor also assigns all right, title, and interest in the leased vehicle to the party identified as the intended assignee, or its designee, under the terms of the Dealer Agreement.

LESSOR _**GOLD COAST AUTOMOTIVE LLC**_ BY _____ TITLE _____
SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS INCLUDING A PROHIBITION OF TRANSFER OF YOUR INTEREST.

671 MONTHLY NJ-AF 1/2011
Copyright © 2011 Ally Financial. All Rights Reserved.

ORIGINAL - ALLY FINANCIAL    Lease Agreement 0

20. [illegible] Mileage Charge. See Section [illegible] total allowed mileage [illegible] last monthly period and the vehicle is not a total loss, any Early Excess Mileage and Wear Charge (Section 36(c)) will not exceed the Residual Value (Section 7(d)) minus the Realized Value [illegible] before the scheduled lease end date. [illegible] the applicable limitation specified in Section 35 (Monthly Payment Lease) or Section 40 (Single Payment Lease). There is no excess mileage charge if you buy the vehicle.

21. Late Charge. If we do not receive a full monthly payment within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.

22. Charge for Fines and Other Items. You will pay promptly any fine, parking ticket, toll charge, toll penalty charge, moving violation fine, or similar charge relating to the vehicle. If you do not, we may pay it. Each time we pay any such fine or charge, you will pay us the amount we pay plus $10. If we pay to remove a lien we did not agree to, you will pay us the amount we pay.

## Insurance, Use, and Care of the Vehicle

23. Required Vehicle Insurance. You must insure the vehicle through liability and physical damage policies acceptable to us. The policies must not exclude or restrict coverage if you were to drive the vehicle, or when the driver is someone you allow to drive the vehicle or who is likely to drive the vehicle. The policies must show any additional insureds and loss payees that we require. You must give us proof of insurance when we ask. We require no other insurance.

Liability insurance must (a) cover at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, or (b) have a combined single limit of at least $500,000 for bodily injuries and property damage for any one accident.

For trucks at 10,000 lbs. GVW or more and public conveyance vehicles, liability insurance must instead (a) provide primary coverage of at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, and umbrella coverage of $1,000,000 or (b) have a combined single limit of at least $1,000,000 for bodily injuries and property damage for any one accident.

Physical damage insurance must be for the full value of the vehicle with deductibles of no more than $1,000 for collision and upset loss and $1,000 for comprehensive fire and theft loss.

If you move to a new state, we will require coverage amounts in keeping with our requirements for the new state. We now estimate that those amounts will be the same as those in this lease, but they may be higher.

24. Use. You will not:

- Use the vehicle illegally, improperly, or for hire.
- Use the vehicle in a way that causes the insurance coverage on the vehicle to be ineffective.
- Remove the vehicle from the United States, except for trips to Canada of under 60 days.
- Move the vehicle to another state for more than 30 days without telling us.
- Change the vehicle without our written consent.
- Replace parts, accessories, or tires with rented or leased items.
- Expose the vehicle to seizure, confiscation, forfeiture, or other involuntary transfer.
- Allow a lien to be placed on the vehicle unless we agree.

You will not let anyone else do any of these things.

25. Maintenance, Repairs, Operating Expenses, and Damage. You will maintain and repair the vehicle to keep it in good condition. Replacement sheet metal must be new original equipment manufacturer parts. Other replacement parts must be original equipment manufacturer parts or parts of equal quality and design. (If insurance will pay for repairs, ask your insurance company to specify original equipment manufacturer sheet metal.) You will pay all maintenance, repair, and operating expenses, including gas and oil. If the odometer stops working, you must fix it immediately. You will service the vehicle as the manufacturer recommends. You will follow the manufacturer's instructions in any recall. If you don't do these things, we may do them. You will owe us our cost if we do. We may inspect the vehicle at any reasonable time and place.

When you take possession of the vehicle, you take on the risks of loss of the vehicle and of damage to it. If the vehicle is damaged, stolen, or destroyed and money becomes available from insurance, a judgment, a settlement, or the like, we will treat the money as an insurance settlement. We and/or Vehicle Asset Universal Leasing Trust will be entitled to this money. If the lease ends in connection with our receipt of the money, we will treat any money we do not use to repair the vehicle as sale proceeds.

26. Excess Wear. Excess wear is wear that is beyond the minor wear reasonably expected to result from ordinary, everyday use, assuming that you use the vehicle as this lease permits (see Section 24) and maintain it as this lease requires (see Section 25). Excess wear includes: (a) glass that is damaged, engraved, or that you tinted; (b) a damaged or corroded body, trim, frame, crossmember, suspension, engine, powertrain, or other mechanical part; (c) damaged paint; (d) a torn, damaged, or stained interior or trunkliner; (e) sheet metal that is not original equipment sheet metal; (f) missing equipment or parts that were in or on the vehicle when delivered and not replaced with equipment or parts of equal quality and design (including a missing wheel, wheel cover, jack, or wheel wrench); (g) a tire (including spare) that is unsafe, is not the size and type the manufacturer recommends, is recapped or a snow tire, or has less than 1/8 inch of tread left at the shallowest point; (h) a damaged or worn brake that does not meet government safety standards; (i) oil leaks or low oil pressure; (j) a malfunctioning electrical system, battery, or lights; (k) holes that you drilled in the vehicle; (l) any change to the vehicle that damages the vehicle or compromises its structural integrity; (m) any other condition that makes the vehicle run in a noisy, rough, improper, unsafe, or unlawful way; and (n) any other damage, whether or not insurance covers it.

## When the Lease Can End

27. Scheduled End.

Monthly Payment Lease - This lease is scheduled to end on the date that is determined as follows: (1) Start with the date on which the second payment is due (even if that date is not an actual calendar date because the month has too few days) (See Section 2(e)); (2) Move that date forward by the number of months in the lease term (Section 15), minus one month; and (3) Subtract one day. If the resulting date is not an actual calendar date (because the month has too few days), the scheduled lease end date is the last actual date in that month minus one day.

Single Payment Lease - This lease is scheduled to end on the date that is determined as follows: (1) Start with the date of the lease; (2) Move that date forward by the number of months in the lease term (Section 15); and (3) Subtract one day. If the resulting date is not an actual calendar date (because the month has too few days), the scheduled lease end date is the last actual date in that month minus one day.

28. Lease End Daily Extension. At scheduled lease end, if you keep the vehicle and do not buy it at that time, you elect to extend the lease. You will pay a daily extension charge beginning on the eighth day after the scheduled lease end date and ending when you return the vehicle. The charge per day is the greater of: (1) 0.0017 times the Residual Value (Section 7(d)); or (2) $25. Unless we agree to a longer extension, you may not extend the lease for more than 30 days. We may set a shorter limit. During the daily extension period, you agree to comply with the terms of this lease, other than terms that apply to monthly payments and early end. The total allowed mileage will not increase.

29. Early End. You may end this lease anytime. We may end this lease if you are in default or if the vehicle is a total loss.

30. Default. You will be in default if any of these things happen:

- You do not pay on time.
- You made a material misrepresentation when you applied for this lease.
- You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property.
- You break any other agreements in this lease.
- You do anything the law says is a default.

If you are in default only because you paid late or not at all, the law may allow you to reinstate the lease. If you do so, you will no longer be in default.

Otherwise, if you are in default, we may end this lease and exercise our rights upon default (see Section 38).

## At Lease End

31. Vehicle Return. Unless you buy the vehicle, you will return the vehicle (including any dealer-installed options you do not buy outright) at lease end to any reasonable place we tell you. After you return the vehicle, you will call us promptly and tell us where you returned the vehicle.

32. Option to Buy the Vehicle. You have an option to buy the vehicle. The price to buy the vehicle after the start of the last monthly period is disclosed in Section 9. The purchase option price disclosed in Section 9 is our price for which we would sell the vehicle to you after the start of the last monthly period.

If this is a monthly payment lease, the price to buy the vehicle before the start of the last monthly period is: (1) the price to buy the vehicle disclosed in Section 9, plus (2) the base monthly payment times the number of payments not yet due, minus (3) any unearned rent charge figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early end and scheduled end.

If this is a single payment lease, the price to buy the vehicle before the start of the last monthly period is: (1) the price to buy the vehicle disclosed in Section 9, plus (2) the Remaining Prepaid Depreciation (Section 37(b)). If this is a single payment lease and you buy the vehicle before the start of the last monthly period, we will give you a credit for (1) the Remaining Prepaid Depreciation (Section 37(b)), plus (2) any unearned rent charge figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early end and scheduled end.

Regardless of when you buy the vehicle, you must also pay any related official fees and taxes, plus any amounts due because you broke agreements in this lease.

33. Odometer Disclosure. Federal law requires you to tell us the vehicle's mileage in connection with a transfer of vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

## What You Owe at Lease End

34. What You Owe If You Buy the Vehicle. If you have paid us the amount you must pay to buy the vehicle under Section 32 and kept your agreements, you will owe us nothing more.

35. What You Owe at Scheduled End, or If You End This Lease On or After the Start of the Last Monthly Period, and You Do Not Buy the Vehicle. You will owe us: (1) any Disposition Fee shown in Section 3 (unless waived, see Section 14); (2) any excess mileage charge (Sections 8, 16, and 20); (3) our estimated or actual cost of repairing excess wear (we do not have to make repairs); (4) any lease end daily extension charge (Section 28); and (5) any additional amounts due under Section 41. We will give you any credits due under Section 41. However, if the vehicle is a total loss before the scheduled lease end date, you will owe us the amount described in Section 39 (Monthly Payment Lease) or Section 40 (Single Payment Lease).

You may get a professional appraisal at the end of the lease term of the amount required to repair or replace parts, or the amount by which excess wear reduced the vehicle's value. The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for the appraisal. The appraisal will be binding on you and us.

36. What You Owe If You End This Lease Before the Start of the Last Monthly Period, and You Do Not Buy the Vehicle - Monthly Payment Lease.

(a) What You Owe: You will owe us an Early End Charge as follows:

The base monthly payment times the number of payments not yet due.
- Any unearned rent charge figured by the Actuarial Method (see Section 42), based on the number of full monthly periods between early end and scheduled end
- Any Surplus (see definition in this section) on the vehicle sale
= The total. If this total is less than zero, we will not give you a refund or credit.

If there is no Surplus, you will also owe us any Early Excess Mileage and Wear Charge (see definition in this section).

## What You Owe at Lease End (Cont.)

You will also owe (1) any Disposition Fee shown in Section 3 (unless waived, see Section 14); [illegible] any additional amounts due under Section 41 [illegible].

(b) Definition of "Realized Value" and "Surplus": We will sell the vehicle at wholesale [illegible] Realized Value, unless you get [illegible] the vehicle that could be realized at sale (see below in this section). If you get such an appraisal, we will use the appraised value of the vehicle as its Realized Value. If the Realized Value exceeds Residual Value (Section 7(d)), the excess is the Surplus. If the Realized Value is the same as or less than Residual Value, there is no Surplus.

Your Right to Obtain an Independent Appraisal of the Vehicle's Wholesale Value. You may get a professional appraisal of the wholesale value of the vehicle that could be realized at sale. The appraiser must be an independent third party. You and we must agree on the appraiser. You must pay for the appraisal and get it within a reasonable time after lease end. The appraised value will then be used as the Realized Value.

(c) Definition of "Early Excess Mileage and Wear Charge": Our estimated or actual cost of any repairs the vehicle needs because of excess wear (we do not have to make repairs), plus any excess mileage charge (Sections 8, 16, and 20). This charge will not exceed the Residual Value (Section 7(d)) of the vehicle minus its Realized Value (Section 36(b)).

37. What You Owe If You End This Lease Before the Start of the Last Monthly Period, and You Do Not Buy the Vehicle - Single Payment Lease.

(a) What You Owe: The single scheduled payment due at lease signing prepays the rent charge, depreciation, and any amortized amounts.

We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early end and scheduled end.

We will give you a credit for any Surplus (see Section 36(b)), up to the amount of the Remaining Prepaid Depreciation (see definition in this section). If the vehicle's Realized Value (Section 36(b)) is less than its Residual Value, you will also owe us any Early Excess Mileage and Wear Charge (Section 36(c)).

You will also owe us: (1) any Disposition Fee shown in Section 3 (unless waived, see Section 14); and (2) any additional amounts due under Section 41. We will give you any credits due under Section 41.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

(b) Definition of "Remaining Prepaid Depreciation": The Remaining Prepaid Depreciation is:

The base single scheduled payment
÷ The number of months in the lease
x The number of full monthly periods between early end and the scheduled lease end date
- The unearned rent charge credit

38. Our Rights Upon Default (Including What You Owe Upon Default). If you are in default, we may, subject to any right to reinstate the lease that you may have:

- End this lease and require you to pay the amount you would have owed: (1) under Section 36 (Monthly Payment Lease) or Section 37 (Single Payment Lease) if you had ended the lease before the start of the last monthly period, or (2) under Section 35 if you had ended the lease on or after the start of the last monthly period.
- Take the vehicle from you without demand. If the law permits, we may go on your property to take the vehicle. If the vehicle has an electronic locating device, we may use the device to find the vehicle.
- Sue you for damages and to get the vehicle back.
- Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law permits. We may take and store any personal items that are in the vehicle. If you do not ask for these items back, we may dispose of them as the law allows. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the vehicle, attorney's fees, collection costs, and court costs.

39. Total Loss Before the Scheduled Lease End Date - Monthly Payment Lease.

(a) Total Loss With a Settlement Under the Required Insurance Coverage: If the vehicle is a total loss before the scheduled lease end date, and we get an insurance settlement under a policy that complies with our requirements (Section 23), you have gap protection.

If the money we get from your insurance is more than the Unamortized Capitalized Cost (see definition in this section), we will not give you a credit for any excess.

If the money we get from your insurance is less than the Unamortized Capitalized Cost (see definition in this section), you will owe the difference up to the amount of your insurance deductible. If the difference is more than your insurance deductible, you will also owe an excess mileage charge (Sections 8, 16, and 20), up to the amount by which the difference exceeds your deductible. We will figure the excess mileage charge as if the lease had ended as scheduled. There will be no credit for unused extra miles.

You will also owe us any additional amounts due under Section 41. We will give you any credits due under Section 41.

(b) Total Loss Without a Settlement Under the Required Insurance Coverage: There is no gap protection if the vehicle is a total loss before the scheduled lease end date and: (1) we do not get an insurance settlement; or (2) we get an insurance settlement under a policy that does not comply with our requirements (see Section 23). You will owe us: (1) the Unamortized Capitalized Cost (see definition in this section); minus (2) any money we get from your insurance; minus (3) if the vehicle is returned to us, its Realized Value (Section 36(b)). If the vehicle is not returned to us, the Realized Value is zero, and you will not have an independent appraisal right (Section 36(b)). If any money we get from your insurance plus the realized value exceeds the Unamortized Capitalized Cost, we will not give you a credit for any excess.

You will also owe us any additional amounts due under Section 41, plus, if the vehicle is returned to us, any Disposition Fee shown in Section 3 (unless waived; see Section 14). We will give you any credits due under Section 41.

(c) Definition of "Unamortized Capitalized Cost": The base monthly payment times the number of payments not yet due, minus any unearned rent charge figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early and scheduled end, plus the Residual Value (Section 7(d)).

40. Total Loss Before the Scheduled Lease End Date - Single Payment Lease.

(a) Total Loss With a Settlement Under the Required Insurance Coverage: If the vehicle is a total loss before the scheduled lease end date, and we get an insurance settlement under a policy that complies with our requirements (Section 23), you have gap protection.

We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early end and scheduled end.

We will give you a credit for the Remaining Prepaid Depreciation (Section 37(b)).

If the money we get from your insurance is more than the sum of the Residual Value (Section 7(d)) plus the Remaining Prepaid Depreciation (Section 37(b)), we will not give you a credit for any excess.

If the money we get from your insurance is less than the sum of the Residual Value (Section 7(d)) plus the Remaining Prepaid Depreciation (Section 37(b)), you will owe the difference up to the amount of your insurance deductible. If the difference is more than your insurance deductible, you will also owe an excess mileage charge (Sections 8, 16 and 20), up to the amount by which the difference exceeds your deductible. We will figure the excess mileage charge as if the lease had ended as scheduled. There will be no credit for unused extra miles.

You will also owe us any additional amounts due under Section 41. We will give you any credits due under Section 41.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

(b) Total Loss Without a Settlement Under the Required Insurance Coverage: There is no gap protection if the vehicle is a total loss before the scheduled lease end date and: (1) we do not get an insurance settlement; or (2) we get an insurance settlement under a policy that does not comply with our requirements (see Section 23). You will owe us: (1) the Residual Value (Section 7(d)); minus (2) any money we get from your insurance; minus (3) if the vehicle is returned to us, its Realized Value (Section 36(b)). If the vehicle is not returned to us, the Realized Value is zero, and you will not have an independent appraisal right (Section 36(b)). If any money we get from your insurance, plus the Realized Value exceeds the Residual Value, we will give you a credit for the excess, up to the amount of the Remaining Prepaid Depreciation (Section 37(b)). We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 42) based on the number of full monthly periods between early and scheduled end.

You will also owe us any additional amounts due under Section 41, plus, if the vehicle is returned to us, any Disposition Fee shown in Section 3 (unless waived; see Section 14). We will give you any credits due under Section 41.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

41. Additional Credits and Amounts Due. Regardless of how the lease ends, you will owe us any unpaid fees and taxes, including any tax on what you owe because the lease ends early, plus any amounts due because you broke agreements in this lease. We may cancel any optional insurance or service, maintenance, or other contracts that we financed for you. We will give you a credit for any amount we get from cancellations. If the lease ends on or after the start of the next-to-last monthly period and you do not buy the vehicle, we will give you a credit for any unused extra miles, unless the vehicle is a total loss (see Section 18).

42. Actuarial Method of Figuring the Unearned Rent Charge. We will use the Actuarial Method to figure the unearned rent charge on a monthly basis. We will treat the rent charge for each monthly period as fully earned on the period's first day. If this is a monthly payment lease, we will treat each monthly payment that you made as if we received it on its due date. We will give you a written explanation of the Actuarial Method upon request.

43. Security Deposit. If you paid a security deposit, we will use it at lease end to pay anything you owe under this lease and do not pay. We will not pay you interest on the security deposit. We will not add to the security deposit any proceeds, money, or funds we receive from the security deposit. After lease end, we will give back any part of the security deposit that remains.

## Additional Terms

44. Assignment By Lessor. If this lease is assigned, the assignee may designate Vehicle Asset Universal Leasing Trust, or its trustee, as agent to hold title for the benefit of the assignee on the vehicle's certificate of title and/or registration.

Any sale and assignment will not be considered to change materially your duties, burden, or risk under this lease. Neither the assignee nor Vehicle Asset Universal Leasing Trust will have to make any repairs to the vehicle, get any insurance, or perform any service Lessor has agreed to perform under this lease. You will look only to Lessor for these services.

If we assign this lease, you will not receive notice of assignment.

45. PROHIBITION OF TRANSFER OF YOUR INTEREST. YOU WILL NOT SUBLEASE OR OTHERWISE TRANSFER (EXCEPT TO YOUR ESTATE) ANY RIGHT OR INTEREST YOU HAVE UNDER THIS LEASE OR IN THE VEHICLE WITHOUT OUR PRIOR WRITTEN CONSENT.

46. Indemnity. You will protect us from all losses, damages, injuries, claims, demands, and expenses arising out of the condition, maintenance, use, or operation of the vehicle. You agree to indemnify, and hold harmless, us and our assigns from all such losses, damages, injuries, claims, demands and expenses.

47. Servicing and Collection Contacts. We may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. We may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS



PO Box 130424
Roseville, MN 55113-0004

June 18, 2014

Court of NJ
402 E STATE STREET
TRENTON, NJ 08608

Re: DIANE MENNA and GERALD C MENNA, Case #: 14-17041
Account No.: XXXXXXXX9751
Vehicle: 2012 CADILLAC SRX
VIN: 3GYFNAE36CS607953

Dear Clerk of Court:

Enclosed please find an original and appropriate number of copies of the following document(s) for filing in the above referenced case:

- Reaffirmation Agreement

Thank you for your anticipated cooperation and please do not hesitate to contact me directly at the number below with any questions.

Sincerely,
C. Bernloehr
Agent
Ally Financial serviced by Ally Servicing LLC
800-495-1578
Fax: 651-367-2005

Enclosure

SAM ClerkCover (CB)